(124 App. Div. 593.)

EGAN v. CHABOT.

(Supreme Court, Appellate Division, First Department. March 6, 1908.)

MASTER AND SERVANT—CONTRACT OF EMPLOYMENT—ACTION FOR BREACH—EVIDENCE.

Evidence *held* insufficient to sustain a verdict for plaintiff on the theory that she was employed for the season at a weekly wage.

Patterson, P. J., and Houghton, J., dissenting.

Appeal from Trial Term.

Action by Nora M. Egan against Theodore J. Chabot. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Reversed, and new trial granted.

Argued before PATTERSON, P. J., and McLAUGHLIN, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

Louis O. Van Doren, for appellant.

Joseph M. Herzberg, for respondent.

LAUGHLIN, J. The action is brought to recover damages for a breach of a contract. The plaintiff alleges that on or about the 25th day of February, 1904, she was employed by the defendant as a designer and trimmer of hats for the season to terminate on the 1st day of July, 1904, at the rate of $25 per week, and that, after working pursuant to the contract until the 30th day of April, she was discharged without just cause, to her damage in the sum of $200. The answer was a general denial. Upon the trial the plaintiff testified: That she had been a designer and trimmer of hats for about 15 years, and was conducting a millinery business of her own on Alexander avenue, in the Bronx, at the time of the negotiations resulting in her employment by the defendant. That she came to the defendant's store in the month of February, 1904, and applied to him for the position of trimmer occupied by a former employé who had left the defendant's employ. That she informed the defendant that she was selling out her business. That she had several customers in the Bronx, and that she would start on $25 a week. That the defendant replied that he had made up his mind not to have any more high-priced trimmers, but that he would think about it and let her know. That a few days thereafter she received a letter from the defendant, asking her to call, and on calling he offered her $20 a week, which she declined, and stated that $25 was very low, whereupon "he said he would give it to me." That she then informed him that she "only wanted a season, until the 1st of July," when she was going to Europe, and he said, "Well, all right," whereupon she remarked, "I suppose you do not have really any business the 1st of July," to which he responded, "Sometimes; if you leave somebody after you for the workroom for July, it will be all right." That the following conversation then took place between them:

"I said I had a very nice young lady in my own employ who was saleslady, and I would recommend her very highly, and take her up there, and he asked me what salary she would get, and I said $8, and he said, 'All right, bring her along,' and that is the way we made arrangements, and I brought Miss O'Neil along with me, and I entered into this employment on the 25th day of February, 1904."

That after being in the defendant's employ for two months she was discharged.

We are of opinion that this conversation constituted a hiring by the week, and that the plaintiff was not employed for the season. The plaintiff's suggestion about the season occurred after the defendant agreed to employ her at $25 per week. It amounted merely to a notification that she could not remain longer than the 1st of July. His assent to that suggestion did not change the agreement, and make it a hiring for the season. Manifestly it was the intention of the defendant to keep the plaintiff in his employ until the end of the season, provided her services were satisfactory and he needed them, but he

did not obligate himself to continue the employment throughout the season. Moreover, she had no right to expect that a definite contract of employment for the season had been made. He said nothing about hiring her otherwise than by the week. She did not decline to work by the week, nor did she exact as a condition of entering defendant's employ that he agree to hire her until the 1st of July. It does not appear that he had any personal knowledge with respect to her ability, and it is manifest that the nature of the work was such that he could not tell without a trial whether her services would be satisfactory. In these circumstances the motive of the defendant in discharging the plaintiff is immaterial. It may be observed, however, that the discharge was not arbitrary, but was owing to her failure to procure satisfactory references after she had entered upon the employment.

It follows that the judgment and order should be reversed and a new trial granted, with costs to appellant to abide the event.

McLAUGHLIN and SCOTT, JJ., concur.

HOUGHTON, J. (dissenting). I think the plaintiff proved a definite hiring to July 1st, and that the jury were justified in finding that the defendant engaged her services for such definite period, and not by the week.

It is true the plaintiff did not testify in exact words that she told the defendant she would remain in his employ until the 1st of July, at the stipulated weekly salary, or that the defendant said in precise terms he would hire her up to that time; but the whole trend of her evidence, as well as that of the defendant, is to that effect. Nor did she prove, as she doubtless could, that there was a well-recognized spring and summer season in the millinery business, beginning about the 1st of March, and ending some time in midsummer, and that the defendant, as well as others in the business, customarily engaged their expert trimmers and heads of departments by the season, and not by the week. When the plaintiff had her first interview with the defendant on the 15th of February, she testifies that she told him she was about selling out her own business, and, understanding "that the position of trimmer" in his establishment was vacant, she desired to apply for it, and that the defendant asked her what "salary" she wanted, and she told him $25 a week, and informed him that, as she was going to Europe on the 1st of July, she only "wanted a season" until that time, and that the defendant responded, "All right," and, upon the plaintiff remarking that she supposed there was not much business after the 1st of July, the defendant said, "Sometimes; if you will leave somebody after you for the workroom for July, it will be all right." The defendant himself testified respecting the same interview, and says that the plaintiff applied for the "position of trimmer," and mentioned a "salary of $25," and that he himself thought $20 "might be a good salary," but that she insisted upon a higher amount, and that he said to her, "if she proved competent to fill the position," he would give her a "salary, that salary" which she demanded. The plaintiff testifies that she had substantially the same conversation at

the last interview, after the defendant had written her a letter telling her to come again regarding the position; but the defendant denies that anything with respect to time was mentioned at the subsequent interview. To my mind the jury could not well interpret the evidence in any other way then that both parties understood that the plaintiff engaged her services to the defendant up to the 1st of July, and that the defendant hired her to that time. The conduct of the defendant indicates that he so understood it, for he pretends to have discharged her because her references did not prove satisfactory, after keeping her in his employ for two months, and says that was a condition of the original hiring. The plaintiff disputes this, and says nothing was said respecting references at the time of making the contract. A fair question for the jury was thus presented, and they resolved it in favor of plaintiff. The only alternative left for the defendant was to claim a hiring by the week, and his own testimony does not establish even that.

The action is for damages for wrongful discharge. The answer is a general denial. Where a servant brings such an action against his master, the defense that the plaintiff was discharged for good and sufficient cause is an affirmative one, which must be pleaded by the defendant. Spitz v. Heinze, 77 App. Div. 317, 79 N. Y. Supp. 187. It is difficult to see, under the pleadings as they stand, how the defendant can justify his discharge. He can only prove he did not discharge her, or that he hired her by the week only. The former he admitted, and the latter he failed to establish.

I see no reason for granting a new trial, and therefore vote to affirm the judgment.

PATTERSON, P. J., concurs.